**No. 19-15707**

# In the United States Court of Appeals for the Ninth Circuit

KIMETRA BRICE, EARL BROWNE, and JILL NOVOROT,
on behalf of themselves and all individuals similarly situated,

*Plaintiffs-Appellees*,

v.

PLAIN GREEN LLC,

*Defendant,*

and

HAYNES INVESTMENTS, LLC, and L. STEPHEN HAYNES,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of California at San Francisco
No. 3:18-cv-01200 (The Hon. William Horsley Orrick)

**REPLY IN SUPPORT OF PLAINTIFFS-APPELLEES' PETITION FOR PANEL REHEARING OR REHEARING EN BANC**

KRISTI C. KELLY
ANDREW J. GUZZO
KELLY GUZZO, PLC
3925 Chain Bridge Rd., Suite 202
Fairfax, Virginia 22030
(730) 424-7527

MATTHEW W.H. WESSLER
JOANNE GRACE DELA PEÑA
GUPTA WESSLER PLLC
2001 K Street NW, Suite 850
Washington, DC 20036
(202) 888-7566
matt@guptawessler.com

*Counsel for Plaintiffs-Appellees (additional counsel listed on inside cover)*

January 5, 2022

LEONARD A. BENNETT
CRAIG C. MARCHIANDO
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, Virginia 23601
(757) 930-3660

ANNA C. HAAC
TYCKO & ZAVAREEI LLP
1828 L St. NW, Suite 1000
Washington, DC 20036
(202) 973-0900

# TABLE OF CONTENTS

Table of authorities ................................................................................................ ii

Reply ....................................................................................................................... 1

Conclusion .............................................................................................................. 8

# TABLE OF AUTHORITIES

**Cases**

*American Express Co. v. Italian Colors Restaurant*,
    570 U.S. 228 (2013) .................................................................................. 5

*Gibbs v. Haynes Investments, LLC*,
    967 F.3d 332 (4th Cir. 2020) ..................................................................... 4

*Gingras v. Think Finance, Inc.*,
    922 F.3d 112 (2d Cir. 2019) ............................................................. 2, 6, 7

*Green Tree Financial Corp.-Alabama v. Randolph*,
    531 U.S. 79 (2000) .................................................................................... 3

*Hall v. Hall*,
    138 S. Ct. 1118 (2018) .............................................................................. 7

*Hayes v. Delbert Services Corp.*,
    811 F.3d 666 (4th Cir. 2016) ................................................................ 1, 7

*Hengle v. Treppa*,
    19 F.4th 324 (4th Cir. 2021) ........................................................ 1, 4, 5, 6

*Henry Schein v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ................................................................................ 3

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
    514 U.S. 52 (1995). ................................................................................... 6

*Poublon v. C.H. Robinson Co.*,
    846 F.3d 1251 (9th Cir. 2017) .................................................................. 6

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) .................................................................................... 3

*Williams v. Medley Opportunity Fund II, LP*,
    965 F.3d 229 (3d Cir. 2020) ..................................................................... 4

**Rules**

Circuit Rule 28-2.6 .............................................................................................. 7

**REPLY**

It is difficult to overstate how much of an outlier the panel decision is in this case. Until the panel majority's opinion, ten separate panels from five circuits had uniformly held that tribal arbitration contracts like those at issue here are unlawful under the FAA. And even after the panel majority issued its opinion, the Fourth Circuit has once again held the same thing, bringing the tally to 11. *See Hengle v. Treppa*, 19 F.4th 324, 336 n.2 (4th Cir. 2021) (opinion of Rushing, J., joined by Niemeyer & King) (noting the Ninth Circuit's break with the other circuits). That makes 27 federal circuit judges—without a single dissent among them. And these 27 judges have all reached the same conclusion because, as Judge Wilkinson has explained, these contracts are a "farce," designed to "game the entire system" by deploying arbitration in a "brazen" attempt to avoid state and federal law that would otherwise apply. *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 674, 676 (4th Cir. 2016).

The contracts (and tribal lending scheme) in this case are no different. By their terms, the contracts—including their delegation clauses—require an arbitrator to exclusively apply tribal law, expressly prohibit the application of any and all federal or state law that would otherwise apply, and, as a result, strip borrowers of the right to pursue exactly the kinds of claims that would hold defendants accountable for their illegal lending enterprises.

1

The defendants don't even disagree with any of this. Their main response is to insist that the panel majority was nevertheless correct to enforce a contract that is designed, from top to bottom, to "skirt state and federal consumer protection laws." *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 (2d Cir. 2019). In service of that position, the defendants boldly assert (at 1) that there "is little new or controversial about the majority's decision," because the majority simply "followed established precedent, including controlling Supreme Court authority," in enforcing the contracts' delegation clauses. And, they say (at 1), that decision was "particularly correct" because the contracts reference the FAA and so afford an arbitrator the authority to "decide issues of arbitrability." Neither claim is even close to correct—as all the other circuits have recognized.

Merits aside, though, one thing is certain. By placing the Ninth Circuit in an extreme outlier position compared with the rest of the country, the panel majority's opinion will turn the Western states into a magnet for tribal lenders (or any other enterprise of questionable legality) who seek to draft their way around legal accountability. Lenders themselves have already recognized the significance of this decision, calling it a "powerful incentive" to move any lawsuit "to a district court in the Ninth Circuit" and insisting that defendants now "fiercely litigate[]" venue "in every case because the location of the lawsuit will be outcome-determinative," *Treppa v. Hengle*, App. for Stay Pending Disposition of Pet. for Writ of Certiorari, No. 21A237

2

(U.S. Dec. 14, 2021) at 21–22. That is not how it should work. This Court should grant rehearing, and bring the Ninth Circuit back into alignment with every other circuit.

**1.** The defendants' defense of the panel majority's decision boils down to one central claim (at 6): If an arbitration contract simply *contains* a delegation clause, "[t]hat should end the inquiry." In their view, that "settled principle[]" is "required" by the Supreme Court's decisions in *Henry Schein v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019) and *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 74 (2010), and so justifies the panel majority's decision to enforce the delegation clauses. Opp'n 10–11.

That is not at all what the Supreme Court has said. To be sure, "parties may agree to have an arbitrator decide . . . gateway questions of arbitrability." *Schein*, 139 S. Ct. at 529 (cleaned up). And parties challenging an arbitration contract containing a delegation clause must also "specifically challenge[] the validity of . . . [the] delegation clause." *Rent-A-Center*, 561 U.S. at 76 (cleaned up). But delegation clauses are not self-enforcing. A delegation clause is "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce." *Schein*, 139 S. Ct. at 529. So it is unenforceable if a "generally applicable defense" under Section 2 of the FAA renders the delegation clause unenforceable. That could be because the costs of arbitrating even a threshold challenge in arbitration is prohibitively high. *See, e.g., Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90–91 (2000) (discussing "prohibitive costs" challenges to a delegation clause). Or it could be, as here, because

3

the contracts strip the arbitrator of the necessary law he or she needs to decide the challenge. And that defense may succeed or fail depending on the precise language of the contract and the nature of the arbitration requirements. But either way, nothing in *Rent-A-Center* or *Schein* stands for the proposition advanced by the defendants—that the mere existence of a delegation clause categorically deprives federal courts of the authority to decide any prospective-waiver challenge. *See Hengle*, 19 F.4th at 335 n.1 (rejecting this exact argument); *see also Gibbs v. Haynes Invs., LLC*, 967 F.3d 332, 339 n.4 (4th Cir. 2020) (finding *Schein* "inapposite"); *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 237 n.7 (3d Cir. 2020) (same).

**2.** Falling back, the defendants insist (at 5) that the panel majority was right to enforce the contracts because "[a]rbitrators are . . . free under the contracts to decide issues of arbitrability by looking to and applying federal common law under the FAA." *See also* Opp'n 12–13 (same). But the contracts are exceedingly clear: They mandate that an arbitrator "shall apply Tribal Law" and forbid the arbitrator from applying "any law other than Tribal Law." 2-ER-118, 128. So, even for a threshold challenge to the enforceability of the contracts, these contractual restrictions "necessarily restrain[] the arbitrator from considering federal law defenses to arbitrability, thereby precluding [borrowers] from effectively vindicating their federal statutory rights." *Hengle*, 19 F.4th at 342; *see also Williams*, 965 F.3d at 243 n.14 (enforcing a delegation clause that forecloses reliance on federal or state law "would

4

effectively allow [the lender] to subvert federal public policy and deny [the borrower] the effective vindication of her federal statutory rights before the arbitration of her claims even began").

The only way, then, to conclude that an arbitrator is "free under the contracts" to apply federal law is to rewrite them, and thereby violate the fundamental principle that a court's job is simply to interpret arbitration contracts "according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). That is just what the panel majority did. *See* Op. 14–19.

The contracts' passing references to the FAA do not change any of this, as the defendants now suggest. *See* Opp'n 12–13. As the Fourth Circuit explained when rejecting this same argument, the only way these references can do the work the defendants want is to take them "out of [their] context" in an attempt to construe them "as a portal through which all federal and state law defenses to arbitrability are imported into the agreement and made available for application by the arbitrator." *Hengle*, 19 F.4th at 341. But that interpretation "would create conflict with the other terms" of the contracts that explicitly "require that the arbitration be 'governed by the laws of the [Tribe]' and forbid the arbitrator to apply 'any other law other than the laws of the [Tribe].'" *Id*. As the Supreme Court has made clear, arbitration contracts, no less than any others, must be read to give effect to all of their terms and "to render them consistent with each other." *Mastrobuono v. Shearson Lehman Hutton,*

5

*Inc.*, 514 U.S. 52, 63 (1995). Reading these clauses together, the interpretation that gives effect to every clause is the one adopted by the other circuits: The clauses referencing the FAA "assert[] that the arbitration provision falls within the purview of the FAA and should accordingly be enforced by a court of competent jurisdiction, but, once the court conveys the dispute to the arbitrator, he or she must apply only the laws of the Tribe to the exclusion of Plaintiffs' potential federal and state statutory rights, including defenses to arbitrability arising under federal and state law." *Hengle*, 19 F.4th at 341 (internal quotation marks omitted).

**3.** Nor does the defendants' invocation (at 19–20) of FAA Section 10 as a pathway to federal review *post hoc* make an otherwise unenforceable arbitration contract enforceable *ad hoc*. If that were true, Section 10 would become a cure-all for any illegal arbitration contract. As other courts have concluded, the back-end review provisions in these contracts were intentionally drafted to "insulate[] the tribe from any adverse award" and to "leave[] prospective litigants without a fair chance of prevailing in arbitration." *Gingras*, 922 F.3d at 128. The proper remedy is not to kick the proverbial can down the road—it is to refuse the contracts' enforcement. *See Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1272 (9th Cir. 2017).

**4.** Finally, the defendants suggest (at 9–10) that tribal arbitration contracts are no different from any other contracts. Far from it. Courts have refused to enforce tribal arbitration contracts under the FAA precisely because they are designed to

6

"game the entire system" by deploying arbitration to avoid the state and federal law that would otherwise apply. *Hayes*, 811 F.3d at 676. As Judge Wilkinson recognized in *Hayes*, companies that are "on the up-and-up" don't draft arbitration contracts to ensure that the company and its allies can "engage in lending and collection practices free from the strictures of any federal law." *Id.* But these companies do. "[T]ribe-payday lending partnership[s]" involve "transparent attempts to deploy tribal sovereign immunity to skirt state and federal consumer protection laws." *Gingras*, 922 F.3d at 126–27 (noting that "[p]art of this scheme involves crafting arbitration agreements . . . , in which borrowers are forced to disclaim the application of federal and state law in favor of tribal law (that may or may not be exceedingly favorable to the tribal lending entity)"). It is telling that virtually no other form of arbitration contract has been invalidated under the prospective waiver doctrine, and that is because no other form of contract attempts to do what these contracts do—renounce wholesale "the authority of the federal statutes to which it is and must remain subject." *Hayes*, 811 F.3d at 675.[1]

---

[1] The defendants' odd claim that the absence of a petition for rehearing in a "related" case poses a "procedural vehicle" issue for en banc review here can be easily dismissed. *See* Opp'n 15–18. The existence or status of another case has no effect on whether the plaintiffs can pursue their claims in federal court against these defendants. Cases are deemed "related" when, for example, they "raise the same or closely related issues." Circuit Rule 28-2.6. But each case "retains its independent character . . . regardless of any ongoing proceedings in the other cases." *Hall v. Hall*, 138 S. Ct. 1118, 1125 (2018).

7

## CONCLUSION

The Court should grant the petition for rehearing or for rehearing en banc.

Respectfully submitted,

/s/ *Matthew W.H. Wessler*
MATTHEW W.H. WESSLER
JOANNE GRACE DELA PEÑA
GUPTA WESSLER PLLC
2001 K Street NW, Suite 850
Washington, DC 20036
(202) 888-1741
*matt@guptawessler.com*

KRISTI C. KELLY
ANDREW J. GUZZO
KELLY GUZZO, PLC
3925 Chain Bridge Rd., Suite 202
Fairfax, Virginia 22030
(730) 424-7527

LEONARD A. BENNETT
CRAIG C. MARCHIANDO
CONSUMER LITIGATION
ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, Virginia 23601
(757) 930-3660

ANNA C. HAAC
TYCKO & ZAVAREEI LLP
1828 L St. NW, Suite 1000
Washington, DC 20036
(202) 973-0900

*Counsel for Plaintiffs-Appellees*

8

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation of Circuit Rule 40-1(a) because it contains 1,873 words excluding the parts exempted by Rule 32(f). This petition complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font.

<u>*/s/Matthew W.H. Wessler*</u>
Matthew W. H. Wessler

*Counsel for Plaintiffs-Appellees*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2022, I electronically filed the foregoing reply in support of the petition with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

/s/*Matthew W.H. Wessler*
Matthew W.H. Wessler

*Counsel for Plaintiffs-Appellees*